## Bowman v. Commonwealth.

Oct. 15, 1940.

Charles L. Seale, Judge.

104

E. B. Rose, Leeburn Allen and George Hogan for appellant.

Hubert Meredith, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

This is a second appeal. Bowman v. Commonwealth, 276 Ky. 745, 125 S. W. (2d) 213.

The appellant, Hack Bowman, was again convicted and sentenced to life imprisonment for the murder of Winfred Slone on the night of April 1, 1938. Slone was an innocent bystander. A number of young men had gathered in the combined saloon, store and filling station of Tom Shoemaker about five miles from Beattyville. Some of them had been drinking before they arrived. Because of their misconduct Shoemaker closed up about ten o'clock. A fight on the outside ensued between July Day, Carl Bumgardner and Henry Oliver. They fought with their fists and feet, perhaps used a bucket as a weapon, around from one side to the op--

posite side of the building. According to the evidence of the commonwealth, the appellant jumped into the fight to take Day's part. It seems that Ernest Slone, a brother of deceased, also entered into the affray. During the melee Bowman fired a ,pistol and the bullet struck Winfred Slone on the back side of the head. He died from its effects within a few hours. According to Bowman's version he tried to separate the men and had pulled the others off of Day. Bumgardner started after him with a wrench and two or three of the other boys/ attacked him. When he was dizzy and down he heard a rock strike the side of the house and, while on his knees, practically unconscious, he fired. his pistol in his own defense.

Instruction No. 1 relating to the defendant's guilt of murder or voluntary manslaughter contains the negation, "not in his necessary or apparently necessary self-defense as defense is defined in Instruction No. 3." Instruction No. 2 contains the definitions of the terms used. No. 3 submits the right of self-defense against the deceased, Winfred Slone. No. 4 extended that right as against Bumgardner, Oliver and Ernest Slone or any one of them, and provided that if in the exercise of that right of self-defense the defendant fired and accidentally and unintentionally shot Winfred Slone he should be found not guilty. This instruction was subject to the qualification that the defendant must not have begun the difficulty by assaulting the other men when it did not reasonably appear to be necessary to protect himself from immediate danger. The point is made that the negation contained in Instruction No. 1 did not relate to the defendant's right under Instruction No. 4, as well as under No. 3, and therefore constituted a prejudicial limitation of his right of self-defense. Specific reference to Instruction No. 3 as containing a definition of self-defense was not necessary, but as it was made reference to No. 4 should also have been included. As we have stated, Instruction No. 3 related to the deceased only, while Instruction No. 4 covered the right of self-defense in relation to those participating in the fight and extending it to the accidental killing of the bystander. It was much the more important under the evidence. But this error cannot be regarded as prejudicial to the appellant's substantial rights. Instructions are sufficient if when read together and considered as a whole they submit the law in a form capable of being under-

stood by the jury. An omission in any one instruction may have been supplied by the inclusion of the factor or element or condition in another instruction, and in determining whether there was a prejudicial error by reason of an omission all the instructions are to be read together. Connor v. Commonwealth, 118 Ky. 497, 81 S. W. 259; Cole v. Commonwealth, 260 Ky. 554, 86 S. W. (2d) 305. Thus the omission of the negative provision as to self-defense from a general instruction has been held cured by the special or separate instruction on self-defense. Winburn v. Commonwealth, 181 Ky. 183, 203 S. W. 1073; Copley v. Commonwealth, 184 Ky. 185, 211 S. W. 558.

Another instruction, after providing that if the jury had reasonable doubt of the defendant having been proved guilty they should find him not guilty, continued:

"Or if you find him *not* guilty but have a reasonable doubt as to whether he has been proven guilty of wilful murder or voluntary manslaughter, you will find him guilty of voluntary manslaughter," etc.

Appellant contends that the inadvertent interpolation of "not" was prejudicial. In applying the foregoing rule as to reading instructions together, it is always assumed that the jury was of sufficient intelligence to understand that the instructions were to be considered as a whole, and as intelligent men to pay no attention to a technical inaccuracy or the inadvertent use of a word. Thus in Underwood v. Commonwealth, 266 Ky. 613, 99 S. W. (2d) 467, 471, a death penalty case, the word "not" was inadvertently omitted from the provision that if the jury should believe the defendant was of unsound mind they should "find him guilty on the grounds of insanity." We held it not to have been prejudicial error.

There is no merit in appellant's argument that it was error to qualify Instruction No. 4 by depriving him of the right of self-defense if he provoked or began the assault, or entered into the affray when not apparently necessary for his own defense. There was abundant evidence that the defendant entered into the affray of his own accord when no one was attacking him. Williams v. Commonwealth, 110 Ky. 848, 186 S. W. 881.

One of the grounds upon which the defendant's motion for a new trial was based is the separation of the

jury. It was from an adjoining county. Along with affidavits of his counsel and himself that they had no knowledge of the separation until after the verdict, the defendant filed the affidavit of Millard Stamper. It was to the effect that after dark on the day on which the case was submitted to the jury, but before the verdict, the jury was abandoned temporarily by Elmer Treadway, the deputy sheriff in charge, who went to a nearby saloon, and that the jury separated on the street and mingled with the crowd. Four of the jurors got in the affiant's car while the others stayed on the opposite side of the street. Stamper drove the car with the four men to the corner where they picked up the deputy sheriff and went to his home. He says nothing about what became of the other eight jurors. The defendant also filed the affidavits of two members of the jury. They say in this connection that some of their group got in Stamper's automobile and some of them pushed the car to start it and then they all walked in front of it. They say the deputy sheriff did go across the street and was out of their sight but do not undertake to say how long.

In the absence of more certain proof, we think the affidavits of the jurors, which, in effect, contradict that of Stamper, are to be accepted. Doubtless all the parties were known to the circuit judge. It is not shown that there was not a substantial compliance with the terms of the Code requiring that a jury in a murder case be kept together. Criminal Code of Practice, sec. 244. It is the further rule when there was only a temporary separation and all the facts and circumstances indicate there was no communication by outsiders or any tampering with the jury to regard the separation as not prejudicial. Adkins v. Commonwealth, 197 Ky. 385, 247 S. W. 26; Tuggle v. Commonwealth, 262 Ky. 440, 90 S. W. (2d) 698. The affidavits of members of the jury may be received to show that they were not guilty of misconduct or irregularity but may not be accepted to impeach their own verdict by stating that they acted wrongfully or irregularly. Lawson v. Commonwealth, 278 Ky. 1, 127 S. W. (2d) 876. The statement of the jurors that some of the jury were kept in one room and some in another and that the rooms were not connected, although both opened on the same porch, cannot be considered under the rule just stated.

The judgment is affirmed.